The STATE of Ohio, Appellee,

v.

MORRIS, Appellant.

[Cite as *State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962.]

Court of Appeals of Ohio,
Fourth District, Pickaway County.

No. 04CA7.

Decided March 2, 2005.

</div>

P. Eugene Long, Pickaway County Prosecuting Attorney, and William L. Archer Jr., Assistant Prosecuting Attorney, for appellee.

David H. Bodiker, Ohio Public Defender, And Stephen P. Hardwick, Assistant Public Defender, for appellant.

---

KLINE, Judge.

{¶ 1} Michael Morris appeals the conviction and sentence entered by the Pickaway County Court of Common Pleas. Morris contends that his sentence is unconstitutional because the trial court increased his sentence because he asserted his right to a trial by jury. Because we find that the trial court's comments at the sentencing hearing indicate that the court considered Morris's exercise of his right to a jury trial as an aggravating factor in sentencing Morris, we agree and remand this case for resentencing. Morris also contends that his sentence is contrary to law because the trial court sentenced him to prison based on facts not found by the jury and because the trial court made the burglary sentence consecutive to the failure-to-comply and vandalism sentences. Based upon our resolution of Morris's first assignment of error, we find that his second and third assignments of error are moot. In his final assignment of error, Morris contends that the guilty verdicts returned by the jury on the burglary and attempted-theft charges are contrary to the manifest weight of the evidence. We disagree because, upon reviewing the entire record, we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice. Accordingly, we affirm Morris's convictions but remand the case for resentencing in accordance with this opinion.

I

{¶ 2} On November 10, 2003, Raymond Park left his Pickaway County home for a little more than an hour. When he returned, he found a small white car backed close to his home with an open trunk. Park looked into the trunk but did not see any of his property. As Park was looking in the trunk, Morris walked out from behind the house and identified himself. Park had grown up with Morris but had not seen Morris in many years and had never invited Morris to his house.

{¶ 3} Morris told Park that he was having car trouble, because the hood was smashed and would not stay down. He asked Park for a pair of locking pliers to hold the hood down. Park noticed that the hood was smashed but that it was shut. He offered Morris a piece of wire to tie down the hood. Morris declined and left.

{¶ 4} After Morris left, Park went into his house and discovered that someone had kicked his back door off its hinges and left it lying on the floor. Park went through his house and determined that nothing was missing. However, he noticed that someone had moved two coffee pots from the top of his gun safe. He contacted the Pickaway County Sheriff's Department the next day.

{¶ 5} Around 2:00 or 3:00 a.m. on November 11, 2004, a security camera at Bubba's Corner in Orient, Ohio, recorded a small white car breaking the glass doors. The camera captured an image of the car's license plate, which was registered to Morris. The camera also took images of the driver, a man wearing a blue hooded sweatshirt, taking cartons of cigarettes out of the store in a silver plastic trash can.

{¶ 6} The owner of the store, Clarence Cardwell, lives nearby and heard the crash. Cardwell rushed to his car and observed the white car pulling out of the store's parking lot. As he pursued the car, he called 911. Cardwell drove over 100 miles per hour to stay with the car as he advised the 911 dispatcher of the car's location. He returned to his store after sheriff's deputies arrived and began pursuit of the car. At the store, Cardwell determined that many cartons of cigarettes, mostly Marlboro brand, were missing.

{¶ 7} As sheriff's deputies pursued the car, they observed the driver, Morris, run a stop sign. They used stop sticks to deflate the front tires of the car. Morris continued to drive with flat tires. He drove through two red lights, nearly crashed into another vehicle, and ran another stop sign before losing control of the car and crashing into a guardrail. He attempted to flee on foot, but deputies apprehended him within 30 yards. Morris was wearing a blue hooded sweatshirt. He had a plastic trash can full of cartons of cigarettes, mostly Marlboro brand, in his car.

{¶ 8} As a result of the events at Park's residence, the Pickaway County Grand Jury indicted Morris on one count of burglary in violation of R.C. 2911.12 and one count of attempted theft in violation of R.C. 2923.02 and 2913.02. As a result of the events at Bubba's Corner and during the ensuing chase, the grand jury indicted Morris on one count of breaking and entering in violation of R.C. 2911.13, one count of theft in violation of R.C. 2913.02, one count of vandalism in violation of R.C. 2909.05, and one count of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331.

{¶ 9} Morris pleaded not guilty to all counts of the indictment. The parties were unable to reach a plea agreement, and the case proceeded to a two-day jury trial. The jury returned a guilty verdict on all counts of the indictment. At the sentencing hearing, the trial court stated:

.   The State of Ohio, it appears to me, made a very reasonable plea offer to you for six years.   Now the fact of the matter is that has to be ran [sic] consecutive with parole, what's left on parole.   That is nothing the State of Ohio has any control over.   * * *

But to say I wouldn't accept the six year offer from the State because I have got a trial on an old sentence, run it consecutive, to me, and I am going to trial with the facts I heard here the last two days, that is ridiculous.   I mean you brought these twelve, thirteen people out in Pickaway County to sit here and listen to a slam dunk case.   There wasn't anything to try here.   Okay. And when you do that, you upset me.   Because I am from Pickaway County, a taxpayer, and so I don't know that you're learning anything from your conduct, other than you're going to apparently try to jam up the system.   * * *

* * * [W]hen you look at your history and what you have just been convicted of, that plea offer by the State before trial is one that, in my opinion, you should have accepted.   * * *

* * * [You] come into court and plead not guilty.   And you put the State to the test and they have proven it.   But those are just aggravating factors, Mr. Morris * * *.

The trial court sentenced Morris to a total of 12 years and 11 months in prison: seven years on the burglary count, five years on the failure-to-comply count, and 11 months on the vandalism count, to run consecutively.   Additionally, the court sentenced Morris to 90 days on the attempted-theft count, 11 months on the breaking-and-entering count, and 11 months on the theft count, to run concurrently with the other counts.

{¶ 10} Morris timely appealed, asserting the following assignments of error: "I. The trial court retaliated against Mr. Morris because he exercised his right to a jury trial.   II. The trial court erred by sentencing Mr. Morris to prison based on facts not found by the jury or admitted by Mr. Morris.   III. The trial court erred by running the burglary sentence consecutive to the failure-to-comply and vandalism sentences.   IV. The guilty verdicts on the burglary and attempted theft were entered against the manifest weight of the evidence."

## II

{¶ 11} In his first assignment of error, Morris asserts that the trial court impermissibly punished him for asserting his right to a jury trial.   The state contends that the trial court did not punish Morris for exercising his right to a jury trial and that the trial court relied upon several proper factors under Ohio's sentencing scheme in sentencing Morris.

{¶ 12} It is axiomatic that "a defendant is guaranteed the right to a trial and should never be punished for exercising that right." *State v. O'Dell* (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220, at paragraph two of the syllabus. Any increase in the sentence based upon the defendant's decision to stand on his right to put the government to its proof rather than plead guilty is improper. *State v. Scalf* (1998), 126 Ohio App.3d 614, 621, 710 N.E.2d 1206; *Columbus v. Bee* (1979), 67 Ohio App.2d 65, 77, 21 O.O.3d 371, 425 N.E.2d 409. If courts could punish defendants for exercising their constitutional right to a jury trial, the right would be impaired by the chilling effect. *Scalf* at 621, 710 N.E.2d 1206; see, also, *North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. This prohibition on increased punishment applies "no matter how overwhelming the evidence of [defendant's] guilt." *Scalf* at 621, 710 N.E.2d 1206, quoting *United States v. Derrick* (C.A.6, 1975), 519 F.2d 1, 3.

{¶ 13} In addition, a court must avoid creating the appearance that it enhanced a defendant's sentence because he elected to go to trial. *Scalf*, 126 Ohio App.3d at 621, 710 N.E.2d 1206; *United States v. Hutchings* (C.A.2, 1985), 757 F.2d 11, 14; *United States v. Stockwell* (C.A.9, 1973), 472 F.2d 1186, 1187. When the court makes statements that "give rise to the inference that [the] defendant may have been punished more severely because of his assertion of the right to trial by jury," we must vacate the sentence (*State v. Hobbs*, Cuyahoga App. No. 81533, 2003-Ohio-4338, 2003 WL 21954778, at ¶ 71), unless the record also contains an unequivocal statement that the defendant's decision to go to trial was not considered in imposing the sentence. *Scalf*, 126 Ohio App.3d at 621, 710 N.E.2d 1206, citing *Hutchings*, supra. "Absent such an unequivocal statement, the sentence will be reversed and the matter remanded for resentencing." Id.; *United States v. Medina–Cervantes* (C.A.9, 1982), 690 F.2d 715, 716–717.

{¶ 14} Morris quotes extensively from the sentencing transcript to illustrate that the trial court, at a minimum, created the appearance that it increased his sentence based upon his decision to go to trial. Specifically, the trial judge candidly stated that he was angry that Morris had elected to go to trial: "There wasn't anything to try here. Okay. And when you do that, you upset me." The trial judge indicated that Morris's decision had a personal and financial effect upon him: "Because I am from Pickaway County, a taxpayer, and * * * you're going to apparently try to jam up the system." The court noted the inconvenience that Morris had caused by exercising his right to a jury trial: "[Y]ou brought these twelve, thirteen people out in Pickaway County to sit here and listen to a slam dunk case." The trial court also ridiculed Morris's decision to go to trial: "But to say * * * I am going to trial with the facts [the court] heard here the last two days, that is ridiculous." Finally, in listing the "aggravating factors" it considered when imposing Morris's sentence, the court noted that

Morris had pleaded not guilty and "put the State to the test and they have proven it."

{¶ 15} We find that these quotations from the sentencing transcript create, at a minimum, the appearance that the trial court enhanced Morris's sentence because he exercised his right to a jury trial. Moreover, the state is unable to point to any place in the record where the trial court made an unequivocal statement that it did not enhance Morris's sentence based upon his exercise of his right to a jury trial. Therefore, we must vacate the sentence imposed by the trial court and remand for resentencing. Accordingly, we sustain Morris's first assignment of error.

## III

{¶ 16} In his second and third assignments of error, Morris asserts that his sentence is contrary to law because the trial court sentenced him to prison based on facts not found by the jury and because the trial court made the burglary sentence consecutive to the failure-to-comply and vandalism sentences. Based upon our resolution of Morris's first assignment of error, we find that his second and third assignments of error are moot. Accordingly, we decline to address them. See App.R. 12(A)(1)(c).

## IV

{¶ 17} In his fourth assignment of error, Morris asserts that the jury's guilty verdicts on the burglary and attempted-theft charges were against the manifest weight of the evidence. The state contends that the record contains substantial evidence upon which the jury could conclude that the state proved all elements of burglary and attempted theft beyond a reasonable doubt.

{¶ 18} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. *State v. Garrow* (1995), 103 Ohio App.3d 368, 370–371, 659 N.E.2d 814; *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus.

{¶ 19} A person commits burglary if he, "by force, stealth, or deception * * * [t]respass[es] in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense." R.C. 2911.12(A)(2). A person commits an attempted theft if he purposefully or knowingly engages in conduct likely to obtain or exert control over the property of another without the owner's consent. R.C. 2923.02 and 2913.02.

{¶ 20} "The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court." *State v. Johnson* (1978), 56 Ohio St.2d 35, 10 O.O.3d 78, 381 N.E.2d 637, quoting *State v. Huffman* (1936), 131 Ohio St. 27, 5 O.O. 325, 1 N.E.2d 313. In particular, "it is difficult to ascertain the intent of a person in forcibly entering an occupied structure if he is apprehended before he commits any overt act inside the premises." *State v. Flowers* (1984), 16 Ohio App.3d 313, 315, 16 OBR 344, 475 N.E.2d 790, overruled on other grounds by *State v. Fontes* (2000), 87 Ohio St.3d 527, 721 N.E.2d 1037. In such a situation, unless circumstances giving rise to a different inference are present, a reasonable inference arises that the person entered the structure with the intent to commit a theft offense. Id.; *State v. Levingston* (1995), 106 Ohio App.3d 433, 436, 666 N.E.2d 312. Even when an accused offers an innocent explanation for his conduct, "a jury is not required to accept a competing inference of innocence if it may infer guilt, beyond a reasonable doubt, from the same circumstances." *Levingston,* id. at 437, 666 N.E.2d 312 (jury not required to accept defendant's explanation that he was looking for a place to get warm, to sleep, and to think). See, also, *State v. Ridgway,* Washington App. No. 02CA20, 2003-Ohio-1152, 2003 WL 1065820 (jury not required to accept defendant's explanation that he was looking for a bathroom); *State v. Tierney,* Cuyahoga App. No. 78847, 2002-Ohio-2607, 2002 WL 1041727 (same); *Flowers,* supra (jury not required to accept defendant's explanation that he entered dwelling to commit voyeurism).

{¶ 21} Here, Morris contends that his convictions are contrary to the manifest weight of the evidence because he was never seen inside Park's home, the only things moved in the house were two coffee pots, even though more valuable things were nearby, no fingerprints were found, and he gave a plausible reason for being in Park's driveway. However, the record also contains evidence that Morris backed his car up to Park's house and opened his trunk. Someone kicked the back door of Park's house in during the short time he was gone. Morris

could have heard Park's car pull into the driveway from inside the house. Morris came walking from the back of the house to greet Park. Park did not know Morris well and had never invited Morris to his house. Morris did not accept the assistance offered by Park.

{¶ 22} The jury was not required to accept Morris's explanation for his conduct. Morris's explanation does not explain why his trunk was open. Nor does it explain why Morris declined Park's offer of wire to tie down the car's hood, and instead drove away with a supposedly unsecured hood. Based upon our review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot find that in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that Morris's conviction must be reversed and a new trial granted on the burglary and attempted-theft charges. Accordingly, we overrule Morris's fourth assignment of error. We affirm in part and reverse in part the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

<div style="text-align:right">

Judgment affirmed in part
and reversed in part,
and cause remanded.

</div>

PETER B. ABELE, P.J., and GREY, J., concur.

LAWRENCE A. GREY, J., retired, of the Fourth District Court of Appeals, sitting by assignment.