OPINION
{¶ 1} Defendant, Michael Dawson, appeals from his conviction and sentence for aggravated robbery, felonious assault, and having weapons under a disability.
 {¶ 2} On November 7, 2005, Tenika Hayes took her friend Justin Render shopping. Render purchased some clothes and *Page 2 
gave the cashier $225.00 out of the $625.00 he had in his wallet. Hayes and Render made plans to see each other later that evening, after Hayes dropped Render off at his home.
 {¶ 3} Later that evening when Hayes picked Render up, she told him she needed to "do something on the East side." Render went along. When Hayes pulled into an alley near State Route 35 and Hoch Street in Dayton, Render saw two men. Hayes stopped the vehicle in the middle of the alley and exited the vehicle while pulling out a gun. The two men, later identified as Robert Amos and Defendant Michael Dawson, then ran up to the vehicle, and Dawson ordered Render to get out of the vehicle at gunpoint.
 {¶ 4} Dawson demanded Render's money and his cell phone, which Render surrendered. Render's wallet contained four hundred dollars. Dawson then ordered Render to get on the ground and not look at him. Amos ordered Render to remove all of his clothing except his underwear. Render complied.
 {¶ 5} Dawson held one foot on Render's neck while holding a gun against Render's face. Render could hear Hayes saying, "We got you now," and Dawson saying, "Good work, baby." Dawson then shot Render in the face. When Render turned over, Dawson and Hayes fired more shots into his back. Render was able to get up and run, and he could hear Hayes yelling, "Kill *Page 3 
him. Why you all let him up."
 {¶ 6} Render ran toward State Route 35, jumping over a fence in the process. Upon reaching the highway Render discovered two Dayton police officers stopped on another call, and he jumped into their police cruiser. The officers immediately transported Render to the hospital, where he remained in a drug induced coma for nine days. Police identified Render after his family reported him missing.
 {¶ 7} Dawson's ex-girlfriend, Antonia Smith, called a police officer with whom she previously had been involved in a romantic relationship. Smith told the officer, Willie Hooper, that she had heard that Amos and Dawson shot and robbed Render, and that they could be found at 128 Xenia Avenue in Dayton, the home of Dawson's new girlfriend. Smith also supplied Hooper with photos of Amos and Dawson.
 {¶ 8} Based on the foregoing information, police obtained a search warrant for 128 Xenia Avenue. A search produced Amos, Dawson, Render's wallet, over four hundred dollars in cash, and the vehicle Hayes drove that night. After Render regained consciousness, he was able to tell police what had happened and who shot him. Render also identified Hayes and Dawson from police photospreads.
 {¶ 9} Defendant, along with co-defendants Robert Amos and *Page 4 
Tenika Hayes, was indicted on one count of aggravated robbery (serious physical harm) in violation of R.C. 2911.01(A)(3), one count of aggravated robbery (deadly weapon) in violation of R.C. 2911.01(A)(1), one count of felonious assault (serious physical harm) in violation of R.C. 2903.11(A)(1), one count of felonious assault (deadly weapon) in violation of R.C. 2903.11(A)(2), and one count of having weapons under disability in violation of R.C. 2923.13(A)(2). The case proceeded to a jury trial on all charges except the having weapons under disability, which was tried to the court. The jury found Defendant Dawson guilty of all charges and specifications, and the trial court found Defendant guilty of having weapons under disability. The court imposed concurrent prison terms totaling eight years, plus one additional and consecutive three year term on the firearm specifications, for a total sentence of eleven years. The trial court also ordered Defendant to pay four hundred dollars in restitution to Justin Render.
 {¶ 10} Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 11} "THE TRIAL COURT ERRED BY ORDERING THE APPELLANT TO PAY COMPLETE RESTITUTION IN THE AMOUNT OF $400.00 WITHOUT *Page 5 
ORDERING EITHER OF HIS CO-DEFENDANTS TO PAY ANY RESTITUTION."
 {¶ 12} Justin Render testified at trial that four hundred dollars was stolen from him when he was robbed and shot. At sentencing the trial court ordered Defendant to pay the full amount of restitution, four hundred dollars. Defendant argues that the trial court abused its discretion in ordering him to pay the full amount of restitution when none of his co-defendants was ordered to pay any part of the restitution. Defendant cites no authority in support of his argument.
 {¶ 13} R.C. 2929.18(A)(1) authorizes the trial court to impose financial sanctions, including restitution in an amount based upon the victim's economic loss, as part of its sentence for a felony offense.State v. Felder, Montgomery App. No. 21076, 2006-Ohio-2330. We have held that where co-defendants act in concert in committing the same offense that causes economic harm to the victim, holding one of the defendant's responsible for the full amount of restitution is permissible and consistent with established principles of tort liability, because one who commits a tort cannot escape liability by showing that another person is also liable. State v. Carter (August 15, 1989), Clark App. No. 2530. See also: State v. Irvin (1987), 39 Ohio App.3d 12, at 13 fn. 2; and State v. Shrickel (September 19, 1997), Wood App. No. WD-96-060, which *Page 6 
follows and quotes Carter, pointing out that joint tortfeasors are jointly and severally liable.
 {¶ 14} In cases of this kind, we have indicated that the common sense approach to restitution is the one proposed by Judge Hendrickson in his dissent in Irvin: that where the crime was a joint venture between co-defendants, each defendant should be responsible for the total loss, that being the full amount of restitution awarded less any contributions from the other defendants. Carter.
 {¶ 15} Defendant's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 16} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED THE APPELLANT, WHO EXERCISED HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL, TO A GREATER PERIOD OF INCARCERATION THAN HIS CO-DEFENDANT, WHO CHOSE TO ENTER A NEGOTIATED PLEA WITHOUT SHOWING THAT NO IMPROPER WEIGHT WAS GIVEN THE FAILURE TO PLEAD GUILTY AND THE TRIAL COURT DID NOT AFFIRMATIVELY SHOW THAT THE COURT SENTENCED DEFENDANT SOLELY UPON THE FACTS OF HIS CASE AND HIS PERSONAL HISTORY."
 {¶ 17} The State made the same plea offer to all three defendants in this case: that if they would plead guilty to one count of felonious assault with the accompanying firearm specifications, the State would agree to recommend a total *Page 7 
sentence of nine years. Robert Amos accepted the State's plea offer and received a total sentence of nine years. Defendant, on the other hand, elected to go to trial and was found guilty of all charges, including two counts of aggravated robbery, two counts of felonious assault, and having weapons under disability, and was sentenced to a total of eleven years. Defendant compares his sentence to the one received by Amos to argue that, because they were charged with identical offenses and he received a harsher sentence, two years more than his co-defendant, the trial court improperly punished him for exercising his right to a jury trial. This record does not support that argument.
 {¶ 18} Beyond question, any increase in sentence that is based upon the defendant's decision to exercise his constitutional right to a jury trial and to put the State to its burden of its proof rather than pleading guilty is improper. State v. Morris, 159 Ohio App.3d 775,2005-Ohio-962. Defendant relies on State v. Brewer (April 26, 1983), Montgomery App. No. 7870, wherein this court, quoting from the syllabus in Columbus v. Bee (1979), 67 Ohio App.2d 65, stated:
 {¶ 19} "Once it appears in the record that the court has taken a hand in plea bargaining, that a tentative sentence has been discussed, and that a harsher sentence has followed a *Page 8 
breakdown in negotiations, the record must show that no improper weight was given the failure to plead guilty . . . (and) must affirmatively show that the court sentenced defendant solely upon the facts of his case and his personal history, and not as punishment for his refusal to plead guilty."
 {¶ 20} In Brewer we reversed and remanded for resentencing because the record failed to affirmatively show that the defendant was sentenced solely upon the facts of his case and his personal history, and not as a punishment for going to trial. We pointed out that the trial court took a hand in the plea bargaining process and offered a shorter prison term if a plea was entered. Then, after Brewer elected to go to trial, the trial court failed to explain why Brewer's sentence was harsher than that of his co-defendants who accepted the plea offer.
 {¶ 21} Defendant's reliance on Brewer is misplaced, becauseBrewer is distinguishable on its facts. In this case, unlike inBrewer, the record does not demonstrate that the trial court took a hand in the plea bargaining process. Neither did the trial court promise any specific sentence in exchange for a guilty plea. Furthermore, due to illness, the judge who presided over the pretrial proceedings, including the plea *Page 9 
offer, was not the same judge who presided over the trial and sentenced Defendant. Additionally, the record in this case, unlike inBrewer, is sufficient to demonstrate that the court sentenced Defendant solely upon the facts of his case and his personal history, and not as punishment for his refusal to plead guilty.
 {¶ 22} Even after being convicted by the jury, Defendant remained unrepentant, expressed no remorse for his actions, and continued to maintain his innocence. The trial court pointed out that the jury found the evidence of his involvement to be quite clear. Furthermore, in imposing sentence the trial court noted that it had considered the purposes and principles of felony sentencing, R.C. 2929.11, the applicable seriousness and recidivism factors, R.C. 2929.12, and the fact that Defendant was on post release control at the time he committed this offense. Brewer is distinguishable and its holding does not apply to these circumstances. Defendant has failed to demonstrate that he received a harsher sentence than his co-defendant as a punishment for his decision to go to trial.
 {¶ 23} Though a court may not impose a harsher sentence than it otherwise would have imposed when the defendant elects to exercise his constitutional right to a trial, the court may *Page 10 
impose a more lenient sentence than it otherwise would have when a defendant enters a plea of guilty or no contest, as Dawson's co-defendant did. The plea is indicative of an admission of wrongdoing and an acceptance of responsibility, which the court may take into consideration in relation to the purposes of felony sentencing set out in R.C. 2929.11(A), and impose a more lenient sentence as a result.
 {¶ 24} Defendant's second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 25} "THE FINDINGS OF GUILT WERE WITHOUT SUFFICIENT EVIDENCE. ADDITIONALLY, THE FINDINGS OF GUILT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 26} Defendant argues that his convictions are not supported by legally sufficient evidence and are against the manifest weight of the evidence because the evidence does not demonstrate that he was the third perpetrator involved in committing these offenses, along with Robert Amos and Tenika Hayes. Defendant claims that only the victim, Justin Render, connected him with these offenses and his testimony is not worthy of belief.
 {¶ 27} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or *Page 11 
sustain the verdict as a matter of law. State v. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 28} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 29} Justin Render, the victim, while he was in the hospital recovering from his gunshot wounds, and after he regained consciousness immediately and positively identified Defendant as one of his assailants from a photospread that was shown to him by Detective Burke. Render further identified Defendant at trial as one of the three perpetrators and described his role and involvement in these offenses. Render's testimony, if believed, and viewed in a light most favorable to the State, would permit a rational trier of facts to find all of the elements of these offenses proven beyond a *Page 12 
reasonable doubt, including the fact that Defendant was one of the three perpetrators of these offenses. Defendant's conviction is supported by legally sufficient evidence.
 {¶ 30} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 31} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, supra.
 {¶ 32} In order to find that a manifest miscarriage occurred, an appellate court must conclude that a guilty verdict is "against," that is, contrary to, the manifest weight of the evidence presented. See,State v. McDaniel (May 1, 1998), Montgomery App. No. 16221. The fact that the evidence is subject to different interpretations on the matter *Page 13 
of guilt or innocence does not rise to that level.
 {¶ 33} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 34} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 35} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 36} Defendant argues that the jury lost its way when it chose to believe Render's testimony because several parts of his testimony were not credible or worthy of belief. However, *Page 14 
the jury was free to believe all, part, or none of the testimony of each witness, because the credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to determine. DeHass.
 {¶ 37} Render's testimony demonstrates that he and Defendant were in close physical proximity to each other, that Render looked at Defendant, and that there was a working streetlight in the area where the offenses occurred. Defendant had put on Render's boots and had one foot on Render's neck, still talking to him, when Render was shot in the face. That shot came from Defendant's direction. Render subsequently saw Defendant and Hayes firing additional shots at him, and he was shot several times in the back and shoulder. When Render got up and ran, he heard Hayes saying, "Kill him. Why you all let him up?" As Render ran toward State Route 35, he was aware somebody was chasing after him, shooting at him. A witness who heard gunshots, Kim Vazquez, saw Defendant with a gun in his hand, chasing another man, Render, toward State Route 35.
 {¶ 38} Shortly after this incident, police located Defendant and Amos inside an apartment building. The vehicle Hayes used to drive Render to the scene of this robbery/shooting was parked in front. A search of that *Page 15 
apartment produced Render's wallet and just over four hundred dollars in cash, the same amount of cash Render had in his wallet when Hayes picked him up. The guilty verdicts are not "contrary to" this evidence.
 {¶ 39} Defendant's defense was that he was not one of the perpetrators. Defendant claimed that his ex-girlfriend, Antonia Smith, and one of the police officers involved in this case, Willie Hooper, were involved in a romantic relationship and they set Defendant up because Hooper did not approve of Smith's relationship with Defendant. The jury did not lose its way, however, simply because they chose not to believe Defendant's theory, which they were authorized to do.
 {¶ 40} Reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the victim's story rather than Defendant's, or that a manifest miscarriage of justice has occurred. Defendant's convictions are not against the manifest weight of the evidence.
 {¶ 41} Defendant's third assignment of error is without merit. The judgment of the trial court will be affirmed.
 BROGAN, J. And DONOVAN, J., concur. *Page 1