{¶ 25} I concur with the majority because we are bound by the precedent set by the Ohio Supreme Court in Foster and Kalish. I write separately to reiterate the same issue raised by Justice Lanzinger, and joined by Chief Justice Moyer and Justice Pfeifer, in the concurring opinion in State v. Hairston, 118 Ohio St.3d 289, 2008-Ohio-2338,888 N.E.2d 1073.
 {¶ 26} In Hairston, the Court held that the defendant's aggregate prison term of 134 years, which resulted from the consecutive imposition of individual sentences, was not cruel and unusual punishment. Id. at ¶ 23. Noting the potential impact of this holding, in spite of its narrow context, Justice Lanzinger urged "the General Assembly to act to repair the damage done to Ohio's criminal sentencing plan as a result ofState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470 * * *."Hairston at ¶ 32 (Lanzinger, J., concurring). Justice Lanzinger was troubled by the *Page 7 
fact that post-Foster, sentencing judges must only consider certain statutory factors, and otherwise enjoy unfettered discretion when imposing a sentence. In her opinion, this result deviates from the original intent of S.B. 2. Id. at ¶ 31-32.
 {¶ 27} I also write separately to address Haschenburger's second assignment of error in light of the Hairston concurrence, as well as to more fully address Haschenburger's arguments that the trial court imposed a "trial tax" upon him and totally disregarded the R.C. 2929.11
and 2929.12 factors.
 {¶ 28} With regards to the "trial tax," argument, Haschenburger contends that the court's imposition of maximum, consecutive sentences was actually a punishment for his choice to go to trial rather than accept a plea bargain.
 {¶ 29} "Appellate courts have found that the trial court abuses its discretion when the record affirmatively demonstrates that defendant received an enhanced sentence in retaliation for rejecting a plea offer." State v. Warren (1998), 125 Ohio App.3d 298, 307, 708 N.E.2d 288
(citing cases). This is so because "[a]ny increase in the sentence based upon the defendant's decision to stand on his right to put the government to its proof rather than plead guilty is improper. If courts could punish defendants for exercising their constitutional right to a jury trial, the right would be impaired by the chilling effect."State v. Morris, 159 Ohio App.3d 775, 2005-Ohio-962, 825 N.E.2d 637, at ¶ 12 (internal citations omitted) see, also, State v. Fritz,178 Ohio App.3d 65, 2008-Ohio-4389, 896 N.E.2d 778, at ¶ 31
 {¶ 30} In the present case there is not enough in the record to show the trial court intended to retaliate against Haschenburger. The trial court did mention during the sentencing hearing that Haschenburger refused a plea deal under which the State would have recommended a twelve-year sentence. However, the trial court then went on to make clear it was not punishing Haschenburger simply because he exercised his right to take the case to trial. Specifically, the trial court stated:
 {¶ 31} "When you do decide to go to trial, that's something that is a decision this Court respects, something that you have the absolute right to do. And if you chose to do that — I'm proud to say that when anybody chooses to do that, I'll make *Page 8 
certain that you receive a fair trial * * *. It is a fair and full opportunity to exercise all of your constitutional rights." (Tr. 22.)
 {¶ 32} Nonetheless, Haschenburger contends that this particular trial court routinely punishes defendants with longer sentences when they exercise their right to go to trial. However, Haschenburger cannot ask this court to take "judicial notice" of the trial court's alleged sentencing pattern. That case has to be made at the trial court during sentencing, so that there is a proper record for us to review.
 {¶ 33} Haschenburger further argues the trial court did not properly apply the required statutory sentencing factors set forth in R.C. 2929.11 and R.C. 2929.12 when sentencing him. As explained by the majority, based upon the Ohio Supreme Court's recent plurality decision in Kalish, we now review felony sentences under a two prong test. Under the first prong we "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law."Kalish at ¶ 26 (O'Connor, J., plurality opinion.) To satisfy this prong, the trial court must consider the statutory sentencing factors in R.C. 2929.11 and R.C. 2929.12, and impose a sentence that is within the statutory range for the relevant offenses. Id. at ¶ 13-15. If the sentence is not clearly and convincingly contrary to law, we move to the second prong, where we determine whether the trial court abused its discretion in its application of the sentencing factors and resulting sentencing determination. Id. at ¶ 17, 19-20.
 {¶ 34} I agree with the majority's conclusion that the sentence in this case was not "clearly and convincingly contrary to law." The trial court did mention the R.C. 2929.11 and R.C. 2929.12 factors and the sentence imposed was within the statutory range for the offenses.
 {¶ 35} Turning to the second prong of the Kalish test, the trial court's selection of a sentence comes close to an abuse of discretion. Haschenburger points to the trial court's statement that it is "decidedly of the opinion that when you commit multiple crimes you suffer multiple penalties." This announcement, by itself, indicates that the trial court did not consider the statutory factors in R.C. 2929.11
and *Page 9 
R.C. 2929.12, and was instead intent on imposing maximum and consecutive penalties based on its personal philosophy. Such action results in the arbitrary imposition of maximum, consecutive sentences regardless of the statutory considerations.
 {¶ 36} Yet the trial court's statement cannot be viewed in isolation. Reviewing the sentencing transcript in its entirety, the trial court did thoroughly explain and analyze the statutory sentencing factors that contributed to Haschenburger's sentence. The trial court stated that it explicitly considered all of the factors required by R.C. 2929.12 and2929.14, and analyzed, on the record, how those factors specifically related to the case and shaped its sentencing determination. As a result, I must agree with the majority's conclusion that the trial court did not abuse its discretion in sentencing Haschenburger. The trial court did comply with all that is required by Foster andKalish, which is admittedly very little.
 {¶ 37} However, there remains the issue of the broad sentencing discretion enjoyed by trial courts post-Foster, which appears to undermine the original goals of S.B. 2. Indeed, Justice Lanzinger, writing for the majority in Foster, foresaw this problem, stating:
 {¶ 38} "[b]y vesting sentencing judges with full discretion, it may be argued, this remedy vitiates S.B. 2's goals, particularly with respect to reducing sentencing disparities and promoting uniformity. * * * It may well be that in the future, the Ohio Criminal Sentencing Commission may recommend Blakely-compliant statutory modifications to the General Assembly that will counteract these, among other, concerns. Nevertheless, we are constrained by the principles of separation of powers and cannot rewrite the statutes." Foster at ¶ 100.
 {¶ 39} Two years later, in her Hairston concurrence, Justice Lanzinger reiterated this point and commented about the actual consequences of theFoster decision, namely that, "[w]hen a defendant is convicted of multiple offenses, the community may now expect maximum and consecutive prison terms as the default sentence. It will take a courageous judge not to `max and stack' every sentence in multiple-count cases."Hairston at ¶ 31 (Lanzinger, J., concurring). Again, however, *Page 10 
she properly found it to be the province of the legislature and not the courts to correct this problem. Id. at ¶ 33.
 {¶ 40} This point bears repeating. As shown by the sentencing result in the present case, the post-Foster sentencing scheme continues to run counter to the goals of S.B. 2. As the Ohio Supreme Court explained inState v. Bates, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, at ¶ 16: "the legislature's expression of its intentions through S.B. 2 appears to evidence a policy decision to limit a trial court's ability to impose consecutive sentences to specific situations." Yet now, as in the instant case, trial courts enjoy nearly unfettered discretion to impose consecutive sentences, no matter what the situation.
 {¶ 41} Thus some action should be taken to restore the current sentencing scheme so that it better comports with the General Assembly's original intent in enacting S.B. 2. However, I agree with Justice Lanzinger's point that based on the separation of powers inherent in our system of government, it is the place of the legislature and not the courts to make those changes. *Page 1