[Cite as *State v. Land*, 2016-Ohio-5175.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MARION COUNTY

STATE OF OHIO,

       PLAINTIFF-APPELLEE,                 CASE NO.  9-15-50

       v.

DURAIN J. LAND,                        O P I N I O N

       DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 15-CR-142

Judgment Affirmed

Date of Decision:   August 1, 2016

APPEARANCES:

    *Nathan D. Witkin* for Appellant

    *Kevin P. Collins* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Durain Land, appeals the judgment of the Court of Common Pleas of Marion County convicting him of one count of possession of heroin and one count of tampering with evidence and sentencing him to a period of eight years in prison. On appeal, Land argues that the trial court erred by sentencing him to a period that was inconsistent with sentences imposed for similar crimes and that his sentence served as a punishment for taking his case to trial. Further, Land argues that he was denied effective assistance of counsel. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On March 27, 2015, a felony complaint was filed in the Marion County Municipal Court charging Land with one count of possession of heroin in violation of R.C. 2925.11(A), (C)(6), a felony of the first degree; one count of possession of cocaine in violation of R.C. 2925.11(A), (C)(4), a felony of the first degree; one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2), (C)(4), a felony of the third degree; and one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree.

{¶3} On April 9, 2015, the Marion County Grand Jury returned a six-count joint indictment against Land, Christopher Sankey, Anthony Riley, Alvin Johnson, and Lindsey Pacha. In the indictment, Land was charged with one count of possession of heroin in violation of R.C. 2925.11(A), (C)(6), a felony of the first

degree; one count of possession of cocaine in violation of R.C. 2925.11(A), (C)(4), a felony of the first degree; one count of trafficking in cocaine with a forfeiture specification in violation of R.C. 2925.03(A)(2), (C)(4), a felony of the third degree; and one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree. Land eventually entered pleas of not guilty to all the charges.

{¶4} On October 23, 2015, Land filed a motion to exclude any evidence relating to other crimes, wrongs, or other bad acts. That same day, Land filed a motion to dismiss due to a violation of his right to a speedy trial.

{¶5} A hearing was held on Land's pending motions on November 10, 2015. During the hearing, the State agreed not to present any evidence regarding Land's prior arrests or from drug transactions that occurred the day of Land's arrest.

{¶6} On November 13, 2015, the State moved to dismiss Counts 2 (possession of cocaine) and 3 (trafficking in cocaine) of the indictment.

{¶7} That same day, the Court denied Land's motion to dismiss and found that the State and counsel for Land had reached an agreement as to Land's motion to exclude other acts evidence.

{¶8} On November 17, 2015, the court dismissed Counts 2 and 3 of the indictment.

{¶9} A two-day jury trial was held on November 17 and November 18, 2015.

{¶10} During voir dire, Land's counsel asked the potential jurors the following,

> [Q:] No. That's - - you know, truth tellers and credible people can
> be unreliable. Fair game, right?
> So that if officers come across as witnesses who seem truthful,
> are you still willing to test it out? Ask yourself, can we rely on
> his testimony beyond all reasonable doubt? Does that seem
> like a fair burden to put on the government?
> Do you think it is?
>
> Prospective Juror 15:        No.
>
> [Q:]   Why not?
>
> Prospective Juror 15:        I don't know. I guess just they have to
> prove what's happened to be the facts.
>
> * * *
>
> [Q:] Let me ask a related question, and I'll try to pin them together.
> Who here has now or has had supervisory authority at a job?
> Okay. I know a lot of you have raised kids. When you resolve
> a dispute as a supervisor, maybe as a teacher - - I keep picking
> on my teacher. You know, imagine you've got Billy and
> Johnny and somebody stole [sic] apple that you couldn't just
> wait to have. And after - - and they all ran home. So you've
> got little Billy and you've got little Johnny.
> And you go, 'Johnny, did you take that apple?'
> 'I did not.'
> 'Billy, did you take that apple?'
> 'I take the Fifth.'
> What do you think happened there? What do you think about
> Billy when he says, 'I take the Fifth'?

-4-

Prospective Juror 17:        He probably did it.

Trial Tr., p. 43-44.  Land's counsel then told the potential jurors that a defendant has the right to remain silent and that the jurors cannot hold that against the defendant if he chooses to exercise that right.

{¶11} The testimony presented at trial established that after prior drug buys during the day the police decided to raid a house where drug trafficking was occurring.  When the police breached the house, Land was identified by several officers and seen throwing a bag out a window, which was later proven to have contained heroin.  Several other people were arrested and charged with various crimes.

{¶12} During the testimony of one of the officers involved in Land's arrest, the following exchange occurred between the officer and Land's counsel:

> Q:   Okay.  Did Manuel Allen reside at that apartment?  Was that his?  Or was it Sankey's?  If you remember.
>
> A:   During my investigation - -
>
> Q:   Well, if it's not clear, I'll withdraw it.
>
> A:   It's clear.  During my investigation, some of the drug buys that we did out at the house, numerous people lived there.  Durain Land was there.  Chris Sankey was there.  Manuel Allen was there.  Alvin Johnson was there.  Lindsey Pacha was there.  And that was just during some of our drug buys at that house that day.

*Id.* at p. 217-218.

{¶13} At the conclusion of the trial, Land was found guilty on both counts. The case proceeded immediately to sentencing. The State recommended a prison term of 12 years, 10 years on the possession count and two years on the tampering count to be served consecutively based on Land's prior record and his lack of taking any responsibility for his actions. Land's counsel asked that Land receive a sentence that was similar to the other defendants charged in the indictment. According to Land's counsel, two of the other men, Allen and Sankey, with longer criminal records than Land and whose actions were more severe pleaded guilty to various felony counts and received sentences of five and a half years (Sankey) and eight years (Allen) in prison respectively. Nothing in the record indicates that the trial court had copies of the other defendants' sentencing entries at Land's sentencing.

{¶14} As to Count 1, Land was sentenced to eight years in prison. As to Count 4, Land was sentenced to 24 months in prison, which was to be served concurrently. Land was advised that he was subject to a mandatory period of five years of postrelease control upon release from prison.

{¶15} On November 30, 2015, another sentencing hearing was held. The court noted that at Land's first sentencing hearing it had forgotten to impose a statutorily mandated fine. Both the State and Land's counsel were given permission to speak, and, again, Land's counsel asked the court to impose a

sentence less than or similar to that imposed on both Allen and Sankey. However, the record does not indicate that the trial court possessed either Allen or Sankey's sentencing entries. The State recommended that the court impose the same eight years as it did before.

{¶16} The court sentenced Land to eight years in prison on Count 1 and 24 months in prison on Count 2, to run concurrently. The court did not impose the mandatory $7,500 because it found that Land was indigent and incapable of paying the fine. Further, it again advised Land that he would be subject to a mandatory five-year period of postrelease control.

{¶17} The court memorialized its decision in an entry filed on December 2, 2015.

{¶18} Land filed this timely appeal, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**APPELLANT WAS DENIED SIXTH AMENDMENT RIGHT TO FAIR TRIAL BECAUSE OF INEFFECTIVE ASSISTANCE OF COUNSEL.**

*Assignment of Error No. II*

**APPELLANT'S SENTENCE IMPROPERLY PUNISHED APPELLANT FOR HIS DECISION TO TAKE THIS MATTER TO A JURY TRIAL.**

***Assignment of Error No. III***

**APPELLANT'S SENTENCE WAS NOT CONSISTANT [SIC] WITH SENTENCES IMPOSED FOR SIMILAR CRIMES COMMITTED BY SIMILAR DEFENDANTS IN VIOLATION OF R.C. SECTION 2929.11(B).**

{¶19} Due to the nature of Land's assignments of error, we elect to address some of them together.

*Assignment of Error No. I*

{¶20} In his first assignment of error, Land argues that he was denied effective assistance of counsel. Specifically, Land argues that his trial counsel was ineffective in three instances. First, Land argues that his counsel was ineffective because he opened the door to previously excluded prior bad acts evidence. Second, Land argues that his counsel should have removed two problematic jurors that indicated that the burden of proof on the government was not fair and that guilt would be inferred if the defendant did not testify. Finally, Land argues that his counsel should have objected to the prosecutor's question as to whether the amount of heroin involved was for personal use on relevancy grounds. We disagree.

{¶21} An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. "To show that a defendant has been

prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." *Id.* at paragraph three of the syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Waddy*, 63 Ohio St.3d 424, 433 (1992), *superseded by constitutional amendment on other grounds as recognized by State v. Smith*, 80 Ohio St.3d 89, 103 (1997).

{¶22} Further, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Barnett*, 3d Dist. Logan No. 8-12-09, 2013-Ohio-2496, ¶ 45. "Ineffective assistance does not exist merely because counsel failed 'to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.' " *Id.*, quoting *Smith v. Murray*, 477 U.S. 527, 535, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

{¶23} First, Land argues that his trial counsel was ineffective when he opened the door to the admission of evidence, which the State agreed not to present to the jury. Specifically, Land argues that the following exchange between his counsel and one of the officers involved in the raid prejudiced him at trial:

Q: Okay. Did Manuel Allen reside at that apartment? Was that his? Or was it Sankey's? If you remember.

A: During my investigation - -

Q: Well, if it's not clear, I'll withdraw it.

-9-

A: It's clear. During my investigation, some of the drug buys that we did out at the house, numerous people lived there. Durain Land was there. Chris Sankey was there. Manuel Allen was there. Alvin Johnson was there. Lindsey Pacha was there. And that was just during some of our drug buys at that house that day.

Trial Tr., p. 217-218.

{¶24} Land argues that the above line of questioning does not support any viable trial strategy. He argues that there were several other options that counsel could have considered to elicit testimony to establish that Land did not reside at the apartment. Land avers that his counsel could and should have objected to the officer's answer as being non-responsive. Finally, he alleges that counsel should have asked the officer if Land had been recorded selling drugs the day of the raid.

{¶25} The State counters Land's arguments by contending that counsel's decisions were strategically made and, therefore, do not rise to the level of ineffective assistance of counsel. The State argues that counsel might have wanted to establish the fact that someone other than Land lived at the apartment. The State also argues that counsel may not have wanted to object to the officer's long-winded answer as an attempt to draw less attention to the officer's answer.

{¶26} Assuming, arguendo, that Land's counsel's performance fell below an objective standard of reasonable representation, Land must also establish prejudice.

**{¶27}** In support of his argument, Land relies on the Seventh District Court of Appeals's decision in *State v. Barr*, 158 Ohio App.3d 86, 2004-Ohio-3900 (7th Dist.). In *Barr*, the defendant was charged and convicted of fleeing and eluding. *Id.* at ¶ 6, 8. Before trial, the trial court suppressed Barr's statement to police that he thought he may have been followed by the police while he was on his motorcycle. *Id.* at ¶ 5. At trial and during cross-examination of the interviewing officer, defense counsel asked the officer, "Did you ever ask [the defendant] why he didn't pull over for you? * * * Did he ever tell you that he didn't see you?" *Id.* at ¶ 33-34. On re-direct-examination, the State was able to elicit testimony regarding the defendant's statement to police where he admitted that he thought he was being followed by the police. *Id.* at ¶ 36-43. The appellate court found that had counsel not opened the door then these statements would have remained inadmissible. *Id.* at ¶ 44. The court also found that the only evidence establishing the defendant's willfulness in eluding police was the statement made by the defendant. *Id.* at ¶ 45. Thus, the court found that counsel was ineffective and the defendant was given a new trial. *Id.* at ¶ 51.

**{¶28}** *Barr*, however, is distinguishable from this case. Most importantly, the line of questioning asked and the answers given in this case were not the sole evidence presented as to any of the elements of the crimes charged unlike the statement in *Barr*. Several officers testified at trial. The officers' testimony

-11-

established that Land was identified by police as the person throwing a plastic bag out of a window, which was later determined to have contained heroin. Therefore, Land was not prejudiced as a result of this line of questioning by his counsel.

{¶29} Second, Land argues that trial counsel was ineffective for failing to remove two seemingly unfavorable jurors during voir dire. Initially, we note that Land has failed to cite any authority in support of his contention. Notwithstanding this fact, we are not persuaded by Land's argument.

{¶30} The Supreme Court of Ohio has "consistently declined 'to second-guess trial strategy decisions' or impose 'hindsight views about how current counsel might have voir dired the jury differently.' " *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 63, quoting *State v. Mason*, 82 Ohio St.3d 144, 157 (1998).

{¶31} Upon review of the record, we find that Land's trial counsel's actions during voir dire did not rise to the level of ineffective assistance of counsel. Rather, the line of questioning was merely trial strategy, which requires high deference. Also, it seems that any potential red flags that arose from the jurors' responses were properly handled by Land's counsel. He allowed the first juror to explain his or her answer, which showed no bias against Land or in favor of the State and he told the jury that they could not hold Land's silence against him.

Therefore, Land has failed to show how his trial counsel's actions were deficient, and we need not determine if Land was prejudiced as a result.

{¶32} Lastly, Land argues that his trial counsel was ineffective for failing to object to the State's line of questioning regarding whether the amount of heroin was for personal use. Again, Land has failed to cite any authority in support of his position, and we are not persuaded by his argument. Even if we assume, arguendo, that this failure fell below an objective standard of representation, Land has failed to show how he was prejudiced as a result.

{¶33} Accordingly, we overrule Land's first assignment of error.

*Assignments of Error Nos. II & III*

{¶34} In his second and third assignments of error, Land argues that his sentence is contrary to law because he was punished for taking his case to trial and because his sentence is inconsistent with the sentences imposed on the other co-defendants. We disagree.

{¶35} "Trial courts have full discretion to impose any sentence within the statutory range." *State v. Noble*, 3d Dist. Logan No. 8-14-06, 2014-Ohio-5485, ¶ 9, citing *State v. Saldana,* 3d Dist. Putnam No. 12–12–09, 2013–Ohio–1122, ¶ 20. "A trial court's sentence will not be disturbed on appeal absent a defendant's showing by clear and convincing evidence that the sentence is unsupported by the record or otherwise contrary to law." *State v. Barrera,* 3d Dist. Putnam No. 12–

12–01, 2012–Ohio–3196, ¶ 20. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus. "An appellate court should not, however, substitute its judgment for that of the trial court because the trial court is in a better position to judge the defendant's chances of recidivism and determine the effects of the crime on the victim." *Noble* at ¶ 9, citing *State v. Watkins,* 3d Dist. Auglaize No. 2-04-08, 2004–Ohio–4809, ¶ 16.

{¶36} R.C. Chapter 2929 governs sentencing. R.C. 2929.11 provides, in pertinent part, that the "overriding purposes of felony sentencing are to protect the public from future crime and to punish the offender." R.C. 2929.11(A). In advancing these purposes, sentencing courts are instructed to "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* Meanwhile, R.C. 2929.11(B) states that felony sentences must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim" and also be consistent with sentences imposed in similar cases.

> The Ohio plan attempts to assure proportionality in felony sentencing through consistency. Consistency, however, does not necessarily mean uniformity. Instead, consistency aims at similar sentences. Accordingly, consistency accepts divergence within a

range of sentences and takes into consideration the trial court's discretion to weigh relevant statutory factors. The task of the appellate court is to examine the available data not to determine if the trial court has imposed a sentence that is in lockstep with others, but whether the sentence is so unusual as to be outside the mainstream of local judicial practice. Although offenses may be similar, distinguishing factors may justify dissimilar sentences.

*State v. Ryan*, 1st Dist. Hamilton No. C-020283, 2003-Ohio-1188, ¶ 10.

**{¶37}** In accordance with these principles, the trial court must consider the factors set forth in R.C. 2929.12(B)-(E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism. R.C. 2929.12(A). However, the trial court is not required to make specific findings of its consideration of the factors. *State v. Kincade*, 3d Dist. Wyandot No. 16–09–20, 2010–Ohio–1497, ¶ 8.

**{¶38}** Additionally, the Supreme Court of Ohio has acknowledged that "a defendant is guaranteed the right to a trial and should never be punished for exercising that right or for refusing to enter [into] a plea agreement[.]" *State v. O'Dell*, 45 Ohio St.3d 140 (1989), paragraph two of the syllabus. Furthermore, this court has stated that "[a]n increased prison term based upon a defendant's decision to exercise his right to a jury trial and require the State to meet its burden of proof, instead of accepting the State's offer to plead guilty, is wholly improper." *State v. Petrik*, 3d Dist. Crawford No. 3-10-06, 2010-Ohio-3671, ¶ 30, citing *State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, ¶ 12 (4th Dist.), citing *State v.*

*Scalf*, 126 Ohio App.3d 614, 621 (8th Dist.1998). "[C]ourts must not create the appearance that it has enhanced a defendant's sentence because he has elected to put the government to its proof." *Scalf* at 621, citing *United States v. Hutchings*, 757 F.2d 11, 14 (2d Cir.1985).

{¶39} Since Land was convicted of a felony of the first degree and a felony of the third degree, the relevant ranges were 3 to 11 years (felony of the first degree) and 9 to 36 months (felony of the third degree), respectively. The trial court sentenced Land to 8 years (felony of the first degree) and 24 months (felony of the third degree) to be served concurrently for a total of 8 years in prison. Thus, the trial court appropriately sentenced Land within the statutory guidelines. Further, upon a review of the record, we cannot find that the trial court erred in imposing this sentence.

{¶40} First, there is no evidence that Land was punished more severely than his co-defendants for taking his case to trial. The trial court did not make any comments on the record either explicitly or implicitly acknowledging that Land's decision to take the case to trial was being considered for the purposes of sentencing. Although the record does not contain the sentencing entries of Allen and Sankey, it appears that Land's trial counsel discussed Allen and Sankey's sentences at the sentencing hearing. Specifically, counsel stated, "The two who have pled guilty with longer records, each in turn who were sanctioned for liability

they were exposed to for previous felonies, the one got a six-year sentence plus two years that he still owed for another felony problem. The other got a four-year sentence with a year and a half on top of that." Trial Tr., p. 327. And later at the resentencing hearing, "I did mention when we were last here for the sentencing the concern about proportionality, only because the other two defendants out of the set who received prison time each in turn got a four-year and then a six-year on this case. They both seemed to be more culpable with respect to videotaped drug dealings and lengthy records." Nov. 30, 2015 Hrg., p. 6.

{¶41} The problem with Land's arguments is that he failed to present the specific circumstances of each of his co-defendant's convictions and sentences during either sentencing hearing. There are several factors that could have led to the trial court's decision to sentence Land to a total of eight years in prison. For example, the trial court may not have known the specific crimes for which the other co-defendants pleaded guilty. It is quite possible that one or both co-defendants pleaded guilty to a lesser felony, which inherently involves a lesser prison sentence. The record does not disclose whether the sentencing judge in this case was the same judge that imposed the sentence in either Allen or Sankey's case. This could also explain how one of two co-defendants received a longer prison sentence as compared to the other co-defendant. Without these facts before the trial court at the time of Land's sentencing, it is impossible for this court to

find that the trial court's decision was contrary to law. Thus, Land has failed to present any clear and convincing evidence that he was punished for exercising his right to trial.

{¶42} Second, because Land's argument regarding proportionality is the same as his argument regarding being punished for exercising his right to trial, we are not persuaded.

{¶43} Accordingly, we overrule Land's second and third assignments of error.

{¶44} Having found no error prejudicial to the appellant, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**