OPINION *Page 2 
{¶ 1} Defendant-appellant Timothy Brown appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of escape. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On January 16, 2007, the Stark County Grand Jury indicted appellant on one count of escape in violation of R.C.2921.34(A)(1)(C)(2)(b), a felony of the third degree. At his arraignment on January 19, 2007, appellant entered a plea of not guilty to the charge.
 {¶ 3} Subsequently, a jury trial commenced on March 5, 2007. The following testimony was adduced at trial.
 {¶ 4} Appellant, according to the parties' stipulation, was convicted in 2006 on one count of menacing by stalking, a felony of the fourth degree. Danielle Smith, a probation officer with the Intensive Supervision Program of the Stark County Adult Probation Department, testified that appellant was placed on probation after being granted judicial release from prison on such charge. Smith testified that appellant was read the rules of probation and was given a copy of the same and that appellant signed the rules indicating that he understood them. As a condition of probation, appellant was placed in the Stark Regional Community Correction Center (SRCCC). According to Smith, the rules of probation warned appellant that, if he absconded from supervision, he could be prosecuted for the crime of escape. Smith further testified that losing contact with SRCCC was considered absconding. *Page 3 
 {¶ 5} Testimony was adduced at trial that, on or about January 3, 2007, appellant complained to SRCCC staff about stomach problems. John Holben, appellant's resident supervisor at SRCCC, testified that after appellant was unhappy with what the nurse he saw at SRCCC recommended, appellant continued complaining of the same stomach problems. According to Holben, "the pain switched from one side to the other side of his stomach. At one point he fell down in front of the door. I mean, it was a real show . . . in my opinion." Transcript at 114. Appellant then saw the nurse again who indicated that SRCCC could send appellant to Statcare but there was no emergency.
 {¶ 6} Holben testified that the administration of SRCCC decided that it would be better for someone from appellant's family to take him to Statcare. Appellant then made arrangement for his mother to pick him up and take him the next day, which was January 4, 2007. When appellant's mother, Linda Brown arrived, Holben told her that she was to take appellant straight to Statcare and to bring him immediately back to SRCCC once he was finished at Statcare. Holben also testified that it was made clear to appellant that he was to go to Statcare and return with no other stops. Appellant was given a pass to go to Statcare. The following is an excerpt from Holben's testimony:
 {¶ 7} "Q. So you know he at least had the rule book and was reading.
 {¶ 8} "A. Yes. He'd been laying on his bed with it open.
 {¶ 9} "Q. And so it's in the rule book how he's supposed behave —
 {¶ 10} "A. Yes. Yes.
 {¶ 11} "Q. — regarding a pass?
 {¶ 12} "A. Yes. *Page 4 
 {¶ 13} "Q. Was he aware this day he was supposed to go there?
 {¶ 14} "A. Yes.
 {¶ 15} "Q. And only go to Statcare?
 {¶ 16} "A. Correct.
 {¶ 17} "Q. Was that articulated to him? Did he understand he was only to go to Statcare?
 {¶ 18} "A. That was said to him. Yes.
 {¶ 19} "Q. Now, was he given a time to be back?
 {¶ 20} "A. No. They are not given a time to get back, be back when they are put on medical, on, ah, basically because it, we don't know for sure. We give them an estimate of time, you know, primarily, depending on what shift it's on, we go to the end of the shift and give them to that point. But we put them on what's called will call, so they are supposed to call as soon as they are done with their appointment and before they leave that — in other words, before he left Statcare, he was supposed to call back and let us know, Hey, I'm on my way back.
 {¶ 21} "Q. Because of the nature of the appointment, because of the nature of emergency room or Statcare, God knows how long you're going to be there?
 {¶ 22} "A. Right. Correct." Transcript at 119-120. Appellant never returned to SRCCC on January 4, 2007.
 {¶ 23} Appellant's mother, Linda Brown, testified that Holben had told her that, while taking appellant to Statcare, she could not stop for lunch or "anything like that." Transcript at 138. On the way to Statcare, appellant told his mother that he had to go to the bathroom and the two stopped at a gas station. Brown testified that after appellant *Page 5 
returned from the bathroom, he was crying and apologized to her before turning and walking away. Brown testified that she then called SRCCC and told them what had happened. After making the telephone call, Brown drove down the road looking for appellant, but was unable to find him. Brown testified that, two days later, she picked appellant up in the Akron area and took him back to SRCCC after he called her.
 {¶ 24} On cross-examination, Brown testified that appellant had similar stomach problems in the past that involved intestinal bleeding. She further testified that appellant was bi-polar and that appellant had been trying to get help for his mental health problems since his first day at SRCCC.
 {¶ 25} Craig Prysock, the deputy director of SRCCC, testified that appellant telephoned him on January 5, 2007, the day after appellant left SRCCC, and told Prysock that he had spent the night in the rain and had made a mistake. After appellant tearfully indicated to Prysock that he wanted to return to SRCCC, Prysock told appellant that he had been terminated from the facility for going AWOL. When asked if appellant knew that he had to return to SRCCC after his Statcare appointment, Prysock responded "[absolutely." Transcript at 168.
 {¶ 26} On cross-examination, Prysock testified that, at one point while appellant was at SRCCC, appellant had asked to see a counselor for mental health problems, but he was unsure whether or not counseling had been set up. He further testified that SRCCC "would have made every effort to set up an appointment." Transcript at 178.
 {¶ 27} Testimony also was adduced at trial that appellant contacted Danielle Smith, his probation officer, on January 5, 2007 and told her that he had spent the night out in the rain and wanted to turn himself in. Appellant, when asked, refused to tell *Page 6 
Smith where he was. Smith also testified that appellant told her that he was suicidal and had attempted suicide the night before, but that he was okay now. Appellant, on January 6, 2007, turned himself in at the Stark County Jail.
 {¶ 28} At the conclusion of the evidence and the end of deliberations, the jury, on March 5, 2007, found appellant guilty of escape. Pursuant to a Judgment Entry filed on March 22, 2007, appellant was sentenced to four (4) years in prison.
 {¶ 29} Appellant now raises the following assignments of error on appeal:
 {¶ 30} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 31} "II. THE TRIAL COURT ERRED IN DENYING THE APPELLANT THE RIGHT TO FIRE HIS TRIAL COUNSEL AND PROCEED TO TRIAL PRO SE.
 {¶ 32} "III. THE APPELLANT WAS DENIED THE RIGHT TO DUE PROCESS BECAUSE HE WAS AFFORDED INEFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 33} "IV. THE TRIAL COURT ERRED BY INCREASING THE APPELLANT'S PRISON TERM TO FOUR YEARS AFTER TRIAL WHEN THE PRE-TRIAL OFFER WAS TWO YEARS, THEREBY PUNISHING THE APPELLANT FOR EXERCISING HIS RIGHT TO TRIAL."
 I {¶ 34} Appellant, in his first assignment of error, argues that his conviction for escape was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 35} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, superseded by State Constitutional Amendment on other grounds inState v. Smith, 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668, the Ohio Supreme Court set forth the standard of *Page 7 
review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 {¶ 36} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 37} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N.E.2d 541, superseded by constitutional amendment on other grounds as stated by State v. Smith,80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. In effect, the appellate court sits as a "thirteenth juror" and "disagrees with the fact finder's resolution of the conflicting testimony." Thompkins at 387. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1. *Page 8 
 {¶ 38} Appellant was convicted of one count of escape in violation of R.C. 2921.34(A)(1)(C)(2)(b). Such section states as follows: "(A)(1) No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement . . .
 {¶ 39} "(C) Whoever violates this section is guilty of escape.
 {¶ 40} "(2) If the offender, at the time of the commission of the offense, was under detention in any other manner or if the offender is a person for whom the requirement that the entire prison term imposed upon the person pursuant to division (A)(3) or (B) of section 2971.03 of the Revised Code be served in a state correctional institution has been modified pursuant to section 2971.05 of the Revised Code, escape is one of the following:
 {¶ 41} "(b) A felony of the third degree, when the most serious offense for which the person was under detention or for which the person had been sentenced to the prison term under division (A)(3), (B)(1)(a), (b), or (c), (B)(2)(a), (b), or (c), or (B)(3)(a), (b), (c), or (d) of section 2971.03 of the Revised Code is a felony of the third, fourth, or fifth degree or an unclassified felony or, if the person was under detention as an alleged or adjudicated delinquent child, when the most serious act for which the person was under detention would be a felony of the third, fourth, or fifth degree or an unclassified felony if committed by an adult."[1] *Page 9 
 {¶ 42} Appellant now maintains that his conviction for escape was against the manifest weight and sufficiency of the evidence because the State failed to prove that appellant purposefully broke or attempted to break the detention and failed to prove that appellant purposefully failed to return to detention. Appellant contends that, due to his condition, he did not have the capacity to consciously make the decision to abscond.
 {¶ 43} However, after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime of escape proven beyond a reasonable doubt.
 {¶ 44} As is set forth in detail above, appellant was advised of the rules of probation and signed the same. The rules warned appellant that absconding from SRCCC could result in escape charges being filed against him. Danielle Smith testified that absconding included failing to maintain contact with any probation officer and leaving a detention facility when the whereabouts of the offender are unknown.
 {¶ 45} Appellant was told that he was to go directly to Statcare and return the same day right after his appointment. However, appellant did not return on January 4, 2007, from his temporary leave. Instead, appellant, who was in Akron, contacted Craig Prysock on January 5, 2007 and indicated that he had made a mistake and wanted to return to SRCCC. While appellant argues that, due to his mental health issues, he lacked capacity to abscond, as noted by appellee, his admission that he had made a mistake by not returning to SRCCC demonstrates consciousness of guilt. In addition, while appellant indicates that he left SRCCC on January 4, 2007, to seek mental health care, there is no evidence whatsoever that appellant absconded to seek medical attention for his mental health problems. Moreover, when appellant contacted Smith on *Page 10 
January 5, 2007, appellant refused to tell her where he was and, when asked by Smith if he needed services for his mental health problems, declined the offer of assistance.
 {¶ 46} We further find that, upon our review of the entire record, we cannot say that the trier of fact clearly lost its way and created a manifest miscarriage of justice in convicting appellant of escape.
 {¶ 47} Based on the foregoing, we find that appellant's conviction for escape was not against the manifest weight or sufficiency of the evidence.
 {¶ 48} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 49} Appellant, in his second assignment of error, argues that the trial court erred in denying him the right to fire his trial counsel and proceed to trial pro se. We disagree.
 {¶ 50} The Sixth Amendment, made applicable to the States through the Fourteenth Amendment, guarantees that a defendant in a criminal trial has an independent right of self representation, and that he may proceed to defend himself without counsel when he voluntarily, knowingly, and intelligently elects to do so. State v. Gibson (1976),45 Ohio St.2d 366, 377, 345 N.E.2d 399, citing Faretta v. California (1975),422 U.S. 806, 95 S.Ct. 2525. A criminal defendant may waive this right to counsel either expressly or impliedly from the circumstances of the case.State v. Weiss (1993), 92 Ohio App.3d 681, 684, 637 N.E.2d 47.
 {¶ 51} In the case sub judice, immediately after the prospective jurors had been summoned, defense counsel indicated on the record that appellant had just fired him. When appellant asked if he could say something, the trial court told him that it was too *Page 11 
late and to quiet down. The trial court also told appellant that once a jury was seated, appellant could tell the court whatever he wanted to on the record. When appellant asked if this meant that he could dismiss his counsel after a jury was seated, the trial court responded as follows: "No, I'm saying once we pick a jury, I'll hear whatever you have to say and we'll decide what we want to do at that point in time." Transcript at 6. Appellant's trial counsel then indicated to the court that appellant wanted to plead guilty if he was sentenced to only one year. The trial court indicated that the matter would be discussed once the jury was seated.
 {¶ 52} After the jury was sworn in, appellant, outside the presence of the jury, was given a chance to address the trial court. Appellant then apologized for his behavior earlier that day and, as noted by appellee, started discussing matters that would be relevant to sentencing. The trial court told appellant that if he was found guilty after the jury trial, he could then present these matters to the trial court. Appellant then indicated that he had nothing more to say.
 {¶ 53} As is clear from the record, appellant never indicated to the trial court that he wanted to represent himself. If appellant had made such a request, then, as noted by appellee, the Faretta protections would have been triggered. Moreover, after the jury was seated, appellant was given a chance to bring anything that he wanted to the trial court's attention. However, appellant never indicated at such time that he wanted to fire his trial counsel.
 {¶ 54} Finally, we find that the trial court did not err in denying appellant's request to fire his trial counsel. At the time appellant made such request, the prospective jurors were waiting for the trial to commence. Moreover, appellant did not renew his request *Page 12 
to fire his trial counsel when later given an opportunity to address the trial court after the jury was seated.
 {¶ 55} Based on the foregoing, we find that the trial court did not err in denying appellant the right to fire his trial counsel and proceed to trial pro se.
 {¶ 56} Appellant's second assignment of error is, therefore, overruled.
 III {¶ 57} Appellant, in his third assignment of error, contends that he received ineffective assistance of trial counsel. We disagree.
 {¶ 58} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. at 141-142. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie,81 Ohio St.3d 673, 675, 1998-Ohio-343, 693 N.E.2d 267. *Page 13 
 {¶ 59} Appellant initially maintains that his trial counsel was ineffective in failing to meet with him and effectively explain the plea offer to him and in failing to tell him that his trial date was scheduled for Monday, March 5, 2007.
 {¶ 60} After the jury found appellant guilty, appellant indicated on the record to the trial court that he did not understand the earlier proposed plea offer of two years. In response, the trial court noted that appellant's counsel had met with appellant for about an hour the Friday before the trial and that, when the trial court was ready to take the plea, appellant indicated that he wanted to proceed to trial. The following is an excerpt from the trial court's discussion with appellant:
 {¶ 61} "THE COURT: And I came down to take the plea of guilty and you decided not to plead guilty and wanted to go to trial.
 {¶ 62} "So I think you've understood more than enough as to what's been going on.
 {¶ 63} "And I know on at least two or three other occasions that we had pretrials in this case, Ed came down, downstairs, went downstairs and talked with you and came back up and indicated that you were not interested in what the prosecutor had offered at that point in time.
 {¶ 64} "I just want the record to be clear; it's not like you haven't known what's been going on." Transcript at 240.
 {¶ 65} The trial court further noted that appellant had attended approximately five pretrials before the trial and that several plea offers had been extended to appellant, who decided not to plead guilty. Thus, appellant's argument that he did not understand the proposed plea is not supported by the record. Moreover, while appellant contends *Page 14 
his trial counsel was ineffective in failing to advise him that the trial was scheduled for March 5, 2007, there is no evidence to such effect in the record.
 {¶ 66} Appellant also contends that his trial counsel was ineffective in failing to object to the judgment entry submitted to the jury as State's Exhibit B. Appellant contends that the judgment entry indicated that appellant was placed on judicial release from prison and argues that allowing the jury to have knowledge that appellant went to prison for the offense of menacing by stalking was prejudicial. However, before the judgment entry went to the jury, the information regarding judicial release was redacted, as was the name of the offense, leaving the jury only with the portion of the document placing appellant on community control and outlining the terms and conditions of the same.
 {¶ 67} Moreover, assuming arguendo, that trial counsel erred in failing to object, we find no prejudice. Upon our review, of the record, we find that there was overwhelming evidence of appellant's guilt and that, therefore, the outcome of appellant's trial would not have been different had trial counsel objected to the judgment entry (Exhibit B) submitted to the jury.
 {¶ 68} Appellant further argues that trial counsel was ineffective in failing to object to "numerous statements which were inadmissible and prejudicial to appellant." Appellant specifically points to the following response from Danielle Smith after she was asked why she did not always charge probationers who lost contact with her with escape:
 {¶ 69} "A. Mr. Brown's case was, um, different in a sense because of his offense. It's a menacing by stalking, which is a felony of the fourth degree, which means Mr. *Page 15 
Brown has engaged himself in a pattern of conduct for him to be on probation to begin with and given the fact, the way he was in SRCC and constantly challenging the rules, he had violated one of the conditions, while he was in SRCC, in having contact with the victim, which the rules specifically state there is no contact.
 {¶ 70} "Then there was also speculation that Mr. Brown had — ." Transcript at 106-107.
 {¶ 71} While counsel did not object to such statement, which appellant contends was hearsay, the trial court, on its own initiative, ordered the comment about speculation be stricken and ordered the jury to disregard the statement.
 {¶ 72} We find that appellant was not prejudiced by counsel's failure to object to Smith's testimony because the jury is presumed to follow the instructions given by a trial judge, including instructions to disregard statements made during trial. State v. Garner (1995),74 Ohio St.3d 49, 59, 656 N.E.2d 623. There is no evidence that the jury disregarded the trial court's instructions to disregard Smith's statement about speculation. In addition, assuming arguendo, that counsel erred in failing to object, we find that there was overwhelming evidence of appellant's guilt and that, therefore, the outcome of appellant's trial would not have been different had counsel objected to Smith's statement in its entirety.
 {¶ 73} Finally, appellant contends that his counsel was ineffective in failing to object to John Holben's comment that, in his opinion, appellant was putting on a "real show" when he fell down. Appellant argues that counsel should have objected to Holben's speculation that appellant was not truly in severe pain. However, once again, assuming, arguendo, that trial counsel erred, we find that the outcome of appellant's *Page 16 
trial would not have been different had counsel objected to Holben's comment. Appellant, therefore, suffered no prejudice.
 {¶ 74} Based on the foregoing, appellant's third assignment of error is overruled.
 IV {¶ 75} Appellant, in his fourth and final assignment of error, contends that the trial court, in sentencing him, punished him for exercising his right to a jury trial. Appellant asserts that while the pretrial offer was two years in prison if he pleaded guilty to escape, the trial court sentenced him to four years after the jury found him guilty of such charge.
 {¶ 76} Initially, we note the decision as to the sentencing of a defendant is within the sound discretion of the trial court and the trial court is not bound by any plea agreement. An appellate court will not reverse a trial court's exercise of discretion if the sentence imposed is within the statutory limit and the trial court considered the statutory criteria. State v. Tutt (1988), 44 Ohio App.3d 138, 139,541 N.E.2d 1090.
 {¶ 77} However, a defendant should never be punished for exercising his right to trial or refusing to enter into a plea agreement. State v.O'Dell (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220. The imposition of a harsher punishment on a defendant for exercising his rights would impair the constitutional right to a trial by creating a chilling effect upon a defendant's ability to exercise his constitutional right. State v.Scalf (1998), 126 Ohio App.3d 614, 621, 710 N.E.2d 1206. Accordingly, a trial court may not augment a sentence because a defendant chooses to force the government to prove his guilt, "no matter how overwhelming the evidence of [defendant's] guilt." Id. *Page 17 
 {¶ 78} However, we find no indication in the record that the trial court promised appellant a two year sentence if he entered a plea of guilty to the charge of escape. The record reveals that appellant's trial counsel, after the jury was escorted to the jury room, asked the trial court if appellant "was still looking at two." Transcript at 224. The trial court, in response, stated as follows: "Not at this point." Transcript at 224. There is no indication in the record, however, that the trial court promised appellant a two year sentence if he entered a plea. Moreover, noted by appellee, there is no indication in the record that the trial court was a participant in the earlier plea negotiations. Rather, the record indicates that the State, during pretrials, had indicated that it would recommend a two year sentence if appellant entered a plea. The trial court is not bound by a recommendation proffered by the State. State v. Kitzler, Wyandot App. No. 16-02-06, 2002-Ohio-5253; Akron v. Ragsdale (1978), 61 Ohio App.2d 107, 109,399 N.E.2d 119
 {¶ 79} Moreover, there is no evidence that the trial court, in sentencing appellant, punished appellant for exercising his right to a jury trial. The trial court, in sentencing appellant, noted that he had three prior felony convictions, "one of which he's just been recently revoked on by Judge Lioi." Transcript at 243. Appellant previously had been convicted of sexual battery, receiving stolen property and menacing by stalking. *Page 18 
 {¶ 80} Appellant's fourth assignment of error is, therefore, overruled.
 {¶ 81} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
 Edwards, J. Hoffman, P.J. and Wise, J. concur. *Page 19 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Because appellant's underlying offense, menacing by stalking, was a fourth degree felony, the charge of escape is a felony of the third degree. *Page 1