[Cite as *State v. Gibson*, **2014-Ohio-1169**.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2013CA00175 |
| | : | |
| REGINALD OCTAVE GIBSON | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of Common Pleas, Case No. 2013CR0120

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     March 17, 2014

APPEARANCES:

For Plaintiff-Appellee:

JOHN D. FERRERO, JR.
STARK COUNTY PROSECUTOR
RENEE M. WATSON
110 Central Plaza South, Ste. 510
Canton, OH 44702-1413

For Defendant-Appellant:

EUGENE O'BYRNE
101 Central Plaza South
Canton, OH 44702

*Delaney, J.*

{¶1} Appellant Reginald Octave Gibson appeals from the August 12, 2013 Judgment Entry of the Stark County Court of Common Pleas. Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Darlene Quarterman and appellant have known each other for 6 years. Prior to January 12, 2013, they had not seen each other for about a month when they "ran into each other" and Quarterman asked appellant about her belongings that were still at his home. Appellant suggested they get together later to discuss moving her things into storage. Quarterman was now involved in a new relationship and her new friend was present when this conversation took place.

{¶3} On January 13, 2013, Quarterman rented a room at the Perry Inn, located at 4531 Lincoln Way East, Perry Township, Massillon, Ohio, for two days. She and appellant were at the motel together in Room 122 drinking with another resident and listening to music. The other resident left and Quarterman and appellant decided to go to the nearby Sheetz gas station to buy beer. On the walk back from Sheetz to the motel, they talked about Quarterman "moving on" in her new relationship. Quarterman testified within five or ten minutes of arriving back in the motel room, appellant began to repeatedly hit her in the face with his fist.

{¶4} Quarterman testified appellant continued "whaling on [her], hitting [her] in the face" for ten or fifteen minutes while she begged him to stop. She tasted blood and felt blood coming from her eye. Appellant told her to take her clothes off and she complied because his fist was drawn back. He continued to strike her repeatedly.

{¶5} At one point, Quarterman said she tried to leave the room while appellant was in the bathroom. She ran out of the motel room naked with her clothes in her hand and knocked on another door. Appellant came out and dragged her back into the room by the braids in her hair.

{¶6} Finally, appellant told her to lie down and be quiet. When the beating stopped and appellant told her to lie still, Quarterman thought he might fall asleep. When he seemed to be asleep, Quarterman ran from the room to the motel office clothed but without shoes and the desk clerk called 911 at 2:52 a.m.

{¶7} Two officers from the Perry Township Police Department responded with paramedics. They found Quarterman in the motel office sitting on a stool; she appeared "shaken up" and was crying and scared. She had obvious significant injuries: her left eye was swollen shut with a large bleeding laceration on it and her nose was swollen. The officers asked what happened and she told them her ex-boyfriend struck her repeatedly in the face with a closed fist. The officers photographed Quarterman's injuries before she was transported by paramedics.

{¶8} The officers found the door of Room 122 ajar and appellant was asleep in the bed. Both officers noticed a large amount of blood throughout the room, on the floor, on a pair of shoes, in the bathroom, and on a wash rag in the sink. The officers woke appellant and pulled the covers off him; as he sat up, they discovered he was naked and there was blood underneath him on the sheets of the bed and the pillowcases.

{¶9} The officers told appellant why they were there and appellant stated he didn't know Quarterman was injured or how it happened; when he went to sleep, she

was fine. Officers observed a small spot of dried blood on appellant's left cheek and a small amount of blood on the palms of both hands; he didn't know how it got there and had no injuries. The officers took photos of the scene and of appellant.

{¶10} Appellant refused to answer any further questions and was arrested.

{¶11} In the meantime, paramedics transported Quarterman to Aultman Hospital by ambulance. They were concerned for her head injury because although she was alert and oriented at first, she became lethargic and could not tolerate the weight of an ice pack on her eye. Quarterman was determined to have fractured orbital bones and a broken nose, requiring surgery.

{¶12} Appellant was charged by indictment with one count of felonious assault pursuant to R.C. 2903.11(A)(1) and one count of abduction pursuant to R.C. 2905.02(A)(2). He entered pleas of not guilty and hired two attorneys in succession.

{¶13} On July 23, 2013, the trial court held a hearing on the second attorney's motion to withdraw and appellant's decision to proceed with trial pro se. The trial was scheduled to begin a week later, on July 30, 2013. The trial court engaged in a lengthy colloquy with appellant, discussing his reasons for representing himself and explaining the implications of doing so. The trial court also appointed standby counsel.

{¶14} The matter proceeded to jury trial as scheduled and appellant was found guilty as charged. He was sentenced to a prison term of eight years on Count I, felonious assault, concurrent with a term of 36 months on Count II, abduction.

{¶15} Appellant now appeals from the judgment entry of his conviction and sentence.

{¶16} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶17} "I.  THE TRIAL COURT ERRED BY ALLOWING APPELLANT TO WAIVE HIS RIGHT TO COUNSEL, AS APPELLANT'S WAIVER WAS NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARY (*sic*)."

{¶18} "II.  THE TRIAL COURT ERRED BY PUNISHING THE DEFENDANT FOR EXERCISING HIS CONSTITUTIONAL RIGHT TO DEFEND HIMSELF AT A JURY TRIAL BY SENTENCING APPELLANT TO THE MAXIMUM SENTENCE FOR THE OFFENSE OF FELONIOUS ASSAULT."

{¶19} "III. THE JURY'S FINDING OF GUILTY WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

**ANALYSIS**

I.

{¶20} In his first assignment of error, appellant argues he did not knowingly, intelligently, and voluntarily waive his right to counsel.  We disagree.

{¶21} The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution provides that a criminal defendant has a right to counsel.  Crim.R. 44(A) provides that a defendant is entitled to counsel "unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel."

{¶22} A criminal defendant also has the constitutional right to waive counsel and to represent himself at trial.  *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, "the Constitution * * * require[s] that any waiver of the right to counsel be knowing, voluntary, and intelligent * * *." *Iowa v. Tovar*, 541 U.S. 77,

87-88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004). "In order to establish an effective waiver of [the] right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph two of the syllabus. The defendant must make an intelligent and voluntary waiver with the knowledge he will have to represent himself, and that there are dangers inherent in self-representation. *State v. Ebersole,* 107 Ohio App.3d 288, 293, 668 N.E.2d 934 (3rd Dist.1995), citing *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

{¶23} In *Gibson, supra,* the Ohio Supreme Court applied the test set forth in *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), which established the requirements for a sufficient pretrial inquiry by the trial court into a waiver of counsel:

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

*State v. Gibson*, 45 Ohio St.2d 366, 377, 345 N.E.2d 399 (1976).

{¶24} In the instant case, the record reveals the trial court met and exceeded the minimum standard required for accepting a valid waiver of counsel. The trial court

conducted a lengthy hearing for the specific purpose of weighing counsel's motion to withdraw and appellant's decision to represent himself. The record reveals this hearing was not cursory; the trial court went to great lengths to urge appellant to reconsider. The trial court discussed the nature of the charges, the statutory offenses included within them, and the range of allowable punishments; the court advised appellant of possible defenses such as alibi or self-defense; finally, the trial court advised appellant of the myriad ways in which he would be disadvantaged by representing himself, not the least of which was his lack of access to a law library.[1] Finally, the trial court appointed standby counsel to assist appellant in preparation for trial, including filing of various discovery materials, and to and remain throughout trial and sentencing.

{¶25} The trial court did not err in permitting appellant to represent himself. Appellant's waiver of counsel was knowing, intelligent, and voluntary, and appellant's first assignment of error is overruled.

II.

{¶26} In his second assignment of error, appellant contends the trial court punished him for exercising his constitutional right to jury trial by imposing a maximum sentence upon Count I, felonious assault. We disagree.

{¶27} It is axiomatic that a defendant should never be punished for exercising his right to trial or refusing to enter into a plea agreement. *State v. O'Dell*, 45 Ohio St.3d 140, 147, 543 N.E.2d 1220 (1989). The imposition of a harsher punishment on a

---

[1] A prisoner's right of access to the courts extends only to direct appeals, habeas corpus applications, and civil rights claims challenging the conditions of confinement. See *Lewis v. Casey*, 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir.1999) (en banc). Appellant's claims here are unrelated to his right of access to the courts.

defendant for exercising his rights would impair the constitutional right to a trial by creating a chilling effect upon a defendant's ability to exercise his constitutional right. *State v. Scalf*, 126 Ohio App.3d 614, 621, 710 N.E.2d 1206 (8th Dist.1998). Accordingly, a trial court may not augment a sentence because a defendant chooses to force the government to prove his guilt, "no matter how overwhelming the evidence of [defendant's] guilt." *Id.*

{¶28} The trial court must avoid the appearance of penalizing a defendant for going to trial. In *State v. Morris*, 159 Ohio App.3d 775, 2005–Ohio–962, 825 N.E.2d 637 (8th Dist.2005), the court observed, "[If] the court makes statements that 'give rise to the inference that [the] defendant may have been punished more severely because of his assertion of the right to trial by jury,' we must vacate the sentence * * * unless the record also contains an unequivocal statement that the defendant's decision to go to trial was not considered in imposing the sentence."*Id.* at ¶ 13, quoting *State v. Hobbs*, 8th Dist. Cuyahoga No. 81533, 2003–Ohio–4338, ¶ 71. "'Absent such an unequivocal statement, the sentence will be reversed and the matter remanded for resentencing.'" *Morris*, 2005-Ohio-962 at ¶ 13, quoting *Scalf*, supra, 126 Ohio App.3d at 621.

{¶29} Appellant here points to no evidence in the record establishing his sentence was in retaliation for trying his case. During the hearing on counsel's motion to withdraw and appellant's decision to represent himself, appellant asked for explanation of the plea offer that appellee made to both of his previous attorneys; appellant believed the offer to be a prison term of six months. Appellee explained in fact the offer was a four-year prison term with the possibility of judicial release after six months into SRCCC. It is clear from the record this offer was extended by appellee

without the trial court's involvement in plea negotiations. The trial court, at length, merely clarified whether appellant wanted to accept the plea offer, and he unequivocally stated no.

{¶30} Upon being found guilty by jury, appellant was sentenced to an aggregate prison term of 8 years. He contends the greater penalty constitutes punishment for his decision to proceed to trial. He points to no statement by the trial court giving rise to the inference the sentence was imposed as punishment for going to trial, however. In fact, the record indicates the trial court made no promise to appellant whatsoever if he decided to enter a plea instead of proceeding to trial. There is no indication the trial court was a participant in the earlier plea negotiations. The trial court is not bound by a recommendation proffered by the state. *State v. Brown*, 5th Dist. Stark No. 2007 CA 00095, 2008-Ohio-880, ¶ 78, citing *State v. Kitzler*, 3rd Dist. Wyandot No. 16-02-06, 2002-Ohio-5253; *Akron v. Ragsdale*, 61 Ohio App.2d 107, 109, 399 N.E.2d 119 (9th Dist.1978).

{¶31} There is no evidence the trial court punished appellant for exercising his right to a jury trial in sentencing him to a prison term of 8 years. We note appellee requested a consecutive term of 36 months for the abduction count, but the trial court instead sentenced appellant to concurrent terms. Appellant's second assignment of error is therefore overruled.

III.

{¶32} In his third assignment of error, appellant argues his convictions upon one count of felonious assault and one count of abduction are not supported by sufficient evidence. We disagree.

{¶33} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶34} Appellant was convicted of one count of felonious assault pursuant to R.C. 2903.11(A)(1), which states in pertinent part, "No person shall knowingly cause serious physical harm to another* * *." He was also convicted of one count of abduction pursuant to R.C. 2905.02(A)(2), which states, "No person, without privilege to do so, shall * * * [b]y force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear[.]"

{¶35} Appellee's evidence consisted, in part, of the testimony of the victim, Darlene Quarterman, who described appellant's assault upon her with his fists. Quarterman's orbital bones and nose were fractured, requiring surgery. When she attempted to flee from the motel room, appellant dragged her back into the room by her hair and she was unable to leave until he fell asleep. Responding officers and

paramedics found Quarterman visibly shaken, scared, and with apparent significant facial injuries.

{¶36} Appellant argues Quarterman's testimony alone is insufficient evidence to establish his guilt because the police did not seek witnesses to the assault and did not confirm the blood in the motel room was that of the victim. Nor was any biological evidence collected and submitted for testing such as DNA testing. He further argues the victim's testimony alone is insufficient evidence to convict him of abduction and there is no evidence the victim suffered physical harm as a result of his alleged action of dragging her back into the motel room by her hair. We disagree.

{¶37} Appellant's argument is premised upon a misunderstanding of our evaluation of the sufficiency of the evidence. In *Thompkins*, supra, 78 Ohio St.3d at 390, the Ohio Supreme Court reiterated our standard of review for determining whether the evidence sufficiently supports a criminal conviction: "A challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." It is axiomatic our inquiry into sufficiency does not encompass the credibility of the witnesses, which is primarily for the trier of fact to determine. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79. Instead, the Court emphasized that "[i]n essence, sufficiency is a test of adequacy." *Thompkins,* supra, at 386.

{¶38} Here, appellant complains the police officers did not seek out the desk clerk or potential witnesses in neighboring motel rooms; nor did they collect possibly

relevant evidence in the room. However, the issue in a sufficiency review concerns whether the evidence, if believed, would support the conviction, not whether a witness's testimony is credible. Having reviewed appellee's evidence in its entirety, we find the evidence presented, including the testimony of the victim, if believed by the trier of fact, would support the guilty verdicts.

{¶39} Appellant's convictions are supported by sufficient evidence and his third assignment of error is overruled.

## CONCLUSION

{¶40} Appellant's three assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J. and

Hoffman, P.J.

Baldwin, J., concur.