[Cite as *State v. Overton*, 2021-Ohio-3193.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2020CA0010 |
| DANIEL OVERTON | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |


CHARACTER OF PROCEEDING:          Criminal appeal from the Morrow County
                                                          Court of Common Pleas, Case No.
                                                          2019CR0137

JUDGMENT:                                      September 13, 2021

DATE OF JUDGMENT ENTRY:         Affirmed


APPEARANCES:

For Plaintiff-Appellee                        For Defendant-Appellant

DAVID HOMER                               WILLIAM T CRAMER
Assistant Prosecutor                       470 Olde Worthigton Road
Morrow County                              Suite 200
60 East High Street                         Westerville OH 43082
Mt. Gilead, OH 43338

*Gwin, P.J.*

{¶1} Appellant Daniel Overton appeals the October 27, 2020 judgment entry of the Morrow County Court of Common Pleas. Appellee is the State of Ohio.

*Facts & Procedural History*

{¶2} On July 8, 2019, the Morrow County Sheriff's Office received a call about an unregistered sex offender living in Morrow County. An officer found this individual, appellant, at the Mount Gilead Library in close proximity to young children. Appellant had been living out of a van in Morrow County since March 2, 2019; however, he failed to register his address until June 17, 2019. Appellant's status as a Tier I sex offender was established by a previous conviction of illegal use of a minor in nudity-oriented material. His status mandated that he register a new address within three days of moving to a new location.

{¶3} Appellant was indicted on August 9, 2019, for failing to personally register with the Morrow County Sheriff's Office within three days, in violation of Ohio Revised Code 2950.04(A)(2)(a) and R.C. 2950.99(A)(1)(iii), a felony of the fourth degree. The indictment alleged that appellant previously pled guilty to illegal use of a minor in nudity-oriented material in violation of R.C. 2907.323(A)(3), a felony of the fifth degree.

{¶4} Prior to an arraignment being held, appellant was transported to Twin Valley Behavioral Hospital. After his return to the Morrow County Jail, he was arraigned. Appointed counsel for appellant (Attorney Johnson) filed a motion for competency hearing on October 3, 2019. The trial court granted the motion, and referred appellant to the Forensic Diagnostic Center for an evaluation of competency to stand trial.

{¶5} Dr. O'Reilly provided the trial court with his competency report on December 4, 2019. The doctor found that appellant was not competent to stand trial. It was also his professional opinion that there was a substantial probability appellant would become capable of understanding the nature and objective of the proceedings against him and of assisting his attorney in his defense within one year, if provided with a course of treatment. Dr. O'Reilly found appellant previously responded to treatment with significant improvement.

{¶6} After the trial court received the report from Dr. O'Reilly, the trial court set the matter for hearing on December 19, 2019. Appellant declined to stipulate to the report, so the hearing was continued to January 15, 2020. At the hearing, counsel for appellant stated appellant wanted to fire him as his attorney. The trial court denied appellant's request and ordered the hearing to go forward with counsel representing appellant. The trial court found appellant incompetent to stand trial and ordered appellant to Twin Valley Behavioral Healthcare. As appellant left the hearing, he threated to harm hospital staff and stated he would refuse medication.

{¶7} On April 28, 2020, the trial court received a report from Twin Valley stating appellant was competent to stand trial. The parties stipulated to the admission of the report, and found appellant competent to stand trial.

{¶8} The trial court held a pre-trial on June 5, 2020. The judgment entry on June 8, 2020 provides that Attorney Johnson indicated appellant wanted to plead guilty. The trial court continued the hearing to June 19, 2020, so that the plea could be on the record.

{¶9} The trial court held the hearing on June 19, 2020. The judgment entry dated June 26, 2020 states that the parties were informed the trial would have to be continued

because of inadequate facilities being available during the pandemic. Further, Attorney Johnson informed the court that appellant no longer wanted to plead guilty. Appellee indicated on the record that, should appellant plead guilty, appellee would recommend community control and would not oppose the court sentencing appellant to time served. Appellant "believed his attorney was untruthful with him and * * * he wished to fire his attorney (for the fourth time)." After the trial court declined to appoint other counsel, appellant "indicated he wished to be his own attorney. The Court advised the Defendant that he would be at a great disadvantage in representing himself, but that he has the right to do so. The Court indicated to the Defendant that he is facing 18 months in the state penitentiary and he will not be treated differently when it comes to the rules of evidence, etc."

{¶10} The trial court set a hearing on July 15, 2020 for a "further explanation of the Defendant's rights and responsibilities acting pro se." The trial court stated this was a follow-up to the June hearing, at which appellant stated he wanted to represent himself at trial. At the July 15th hearing, the trial court discussed appellant's competency situation with him, noting that appellant was reasonably well-educated, having good language skills. Appellant stated he felt comfortable with the proceedings and knew what was going on. The trial court told appellant it was his right to represent himself, but also "wanted to make sure that you understand if you choose to represent yourself that you will be held to the same rules of evidence that a lawyer must follow" and that his lack of knowledge of any of the rules will not prevent the court from enforcing those rules. The court cautioned appellant that because of his lack of experience and lack of knowledge of the

rules of evidence, he may have difficulty asking questions of the witnesses if he represents himself.

{¶11} The trial judge informed appellant the court could not give him assistance, but that standby counsel appointed by the court was ready, willing, and able to defend appellant, and would either be in the courtroom or at the table with appellant, whatever appellant chose.

{¶12} The trial court informed appellant of the charge against him, and specifically told him of the range of possible penalties he would face if convicted. The trial court also told appellant if he was sentenced to prison, he would be subject to post-release control, and, if he violated post-release control or committed a new felony offense, he could be sent back to prison. The trial court specifically notified appellant what the "worst case scenario" would be for appellant in terms of prison time and post-release control.

{¶13} The trial court told appellant that, as his own attorney, he would have to raise and prove any affirmative defenses available to him, as well as any mitigating defenses. The trial court emphasized that appellant's lack of knowledge of the existence of these defenses or the appropriate procedure to introduce them would not be grounds for appeal, and suggested this was a good reason to have counsel rather than proceed pro se; the court also stated appellant would be wise to have counsel to preserve issues for appeal.

{¶14} When the trial court asked if appellant had any questions, appellant stated, "there is not much I have to say." Appellant proceeded to suggest he may want to enter a plea of not guilty by reason of insanity. The trial court stated appellant could enter that plea if he liked, but suggested appellant consult with counsel in order to get that plea

properly before the court, and suggested he would be better off having counsel assist him with plea due to the evidence that would likely be necessary to assist appellant, such as the subpoenaed testimony of psychiatrists or psychologists.

{¶15}   Due to the pandemic, the courthouse was not a setting in which the required social distancing could be maintained.  Thus, the trial would have to be continued until the county obtained an alternate trial site.  Appellant said, "then I should probably plead guilty and apologize for committing this," because "it might be easier.   There was extenuating circumstances and there was a big miscommunication, disinformation from, I guess, various places."  Appellant then spoke with his standby counsel, and confirmed to the court he wanted to change his plea to a no contest plea.  The trial court stated appellant had to come to the courtroom in-person to complete the plea, and set the matter for July 20, 2020.

{¶16}   The trial court issued a judgment entry setting the matter for a change of plea hearing and stating that, after it further advised appellant of his rights and responsibilities acting pro se, appellant indicated he wanted to change his plea.  At the change of plea hearing on July 20, 2020, appellant stated he no longer wished to plead no contest.

{¶17}   The trial court held a jury trial in October of 2020.  At trial, the county clerk testified about court records indicating that appellant pled guilty to illegal use of a minor in nudity-oriented material, was declared a Tier I sex offender, and was notified of his registration requirements.  Appellant's sister testified that appellant was living in Indiana for a time, but returned to Ohio in June of 2019.  She also testified that appellant threated

her and stated he was going to slit her throat. On July 8, 2019, Detective Smith found appellant's van in the library parking lot and found appellant interacting with children.

{¶18} Appellant testified he did everything in his power to register and that his sister was cyber-stalking him. Appellant stated he was not required to register because of the prior perjury of multiple individuals involved in the case.

{¶19} On October 5, 2020, the jury found appellant guilty of the charge in the indictment. The trial court ordered a pre-sentence investigation report and set a sentencing hearing for October 23, 2020.

{¶20} The trial court issued a judgment entry of sentence on October 27, 2020, sentencing appellant to seventeen months in prison. The trial court specifically stated it asked appellant if he would be willing to be on community control, but appellant clearly indicated he would not be willing to do so. As a result, the court found appellant not amenable to community control and imposed a prison term of seventeen months in prison, with jail time credit of 407 days.

{¶21} Appellant appeals the October 27, 2020 judgment entry of the Morrow County Court of Common Pleas, and assigns the following as error:

{¶22} "I. APPELLANT'S RIGHT TO COUNSEL UNDER FEDERAL AND STATE CONSTITUTIONS WERE VIOLATED WHEN THE TRIAL COURT PERMITTED HIM TO PROCEED PRO SE WITHOUT ENSURING A KNOWING, INTELLIGENT, AND VOLUNTARY WAIVER OF COUNSEL."

I.

{¶23} Whether appellant waived his right to counsel is an issue that we review de novo. *State v. Nelson*, 1st Dist. Hamilton No. C-150480, 2016-Ohio-8064.

{¶24} The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution provide a criminal defendant has a right to counsel. Criminal Rule 44(A) provides that a defendant is entitled to counsel "unless after being fully advised of his right to assigned counsel, he knowingly, intelligently, and voluntarily waives his right to counsel."

{¶25} A criminal defendant also has the constitutional right to waive counsel and to represent himself at trial. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In such a situation, "the Constitution * * * require[s] that any waiver of the right to counsel be knowing, voluntary, and intelligent * * *." *Iowa v. Tovar*, 541 U.S. 77, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004), Criminal Rule 44(A). "In order to establish an effective waiver of [the] right to counsel, the trial court must make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right." *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976).

{¶26} In *Gibson*, the Ohio Supreme Court applied the test set forth in *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316 (1948), which established the requirements for a sufficient pretrial inquiry by the trial court into a waiver of counsel:

To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made

only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

{¶27} Appellant contends the trial court committed error in permitting him to represent himself, as his waiver was not knowing, intelligent, and voluntary, because the trial court did not sufficiently explain the disadvantages of proceeding pro se, and did not have a detailed discussion with appellant about the defenses available to him and the advantages of court-appointed counsel.  We disagree with appellant.

{¶28} The record reflects the trial court adhered to the *Gibson* standard and complied with the requirements of Criminal Rule 44(A).  The trial court set aside time to conduct a hearing for the specific purpose of considering appellant's decision to represent himself.  The record reveals this hearing was not cursory, and the trial court encouraged appellant to reconsider and have Attorney Johnson represent him.  A significant amount of time was spent advising appellant of the nature of the charges, advising him of the potential penalties, advising him about post-release control, stating he would be held to the same rules of evidence an attorney has to follow, and informing appellant he would have to raise affirmative or mitigating defenses.

{¶29} The judgment entry from the June 19th hearing states the court informed appellant he would be at a great disadvantage in representing himself.

{¶30} At the July 15th hearing, the trial court specifically cautioned appellant that because of his lack of experience and lack of knowledge of the rules of evidence, he may have difficulty asking questions of the witnesses.  The court suggested appellant's lack of knowledge of affirmative or mitigating defenses was a good reason to have counsel rather than proceed pro se; additionally, that appellant would be wise to have counsel to

preserve issues for appeal. The trial court informed appellant that he could plead not guilty by reason of insanity, but stated appellant would be wise to consult counsel in order to determine who would need to be subpoenaed and testify, such as a psychiatrist or a psychologist. Finally, the trial court appointed standby counsel to assist appellant in preparation for trial, and to remain throughout the trial and sentencing. *State v. Gibson*, 5th Dist. Stark No. 2013CA00175, 2014-Ohio-1169.

{¶31} Further, at the beginning of his trial during jury selection, appellant again stated that his attorney was not adequate and he did not want him to represent him. Throughout the proceedings (June 19th judgment entry, July 15th hearing, beginning of trial) appellant consistently stated he wanted to fire his attorney and represent himself.

{¶32} Unlike the cases in which we have found the defendants did not knowingly, voluntarily, and intelligently waive their right to counsel, in this case, the trial court completed a thorough review of the charge, allowable punishment, and reviewed with appellant the dangers of representing himself. See *State v. Smith*, 5th Dist. Muskingum No. CT2017-0066, 2018-Ohio-5121 (waiver of counsel was not voluntarily and intelligently made when the court did not engage Smith in a conversation regarding the nature of the charges, allowable punishments, possible defenses, or any of the dangers of representing himself); *State v. Ngaka*, 5th Dist. Delaware No. 19 CAC 09051, 2020-Ohio-3106 (asking "is that what you want to do" did not sufficiently demonstrate appellant's decision to waive counsel).

{¶33} In appellant's previous case, the trial court did not explain the charges against him, did not explain the dangers of self-representation, and there was concern expressed by counsel about appellant's recent mental state. *State v. Overton*, 5th Dist.

Morrow No. 12CA0019, 2013-Ohio-3590. Here, the trial court explained the charge to appellant and explained the dangers of self-representation. There was no concern expressed by counsel about appellant's recent mental state.

{¶34} Appellant contends that because he had previously been declared incompetent and had to be restored to competency, it should have triggered a more rigorous colloquy than normal. However, as this court has previously stated, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." *State v. Newman*, 5th Dist. Stark No. 2017CA00219, 2018-Ohio-3253, quoting *Godinez v. Moran*, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). Appellant's lack of understanding of trial procedure and/or defenses are not relevant to appellant's competence to waive his right to counsel. *Id.*

{¶35} At the July 15th hearing, the trial court discussed appellant's competency with him, finding he was reasonably well-educated and had good language skills. Appellant stated he felt comfortable with the proceedings and knew what was going on, and had no questions of the trial court. After appellant suggested he may want to plead not guilty by reason of insanity, he then stated he would plead no contest and apologize. At that point in the case, appellant had been restored to competency according to the report provided by Dr. O'Reilly, and appellant's actions with regards to his demeanor during the proceedings were consistent with Dr. O'Reilly's notes in his report declaring appellant competent. The record fails to reflect that appellant was incompetent to waive his right to counsel.

{¶36} The trial court did not commit error in permitting appellant to represent himself. Appellant's waiver of counsel was knowing, intelligent, and voluntary. Appellant's assignment of error is overruled.

{¶37} The October 27, 2020 judgment entry of the Morrow County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Delaney, J., and

Wise, Earle, J., concur